IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISON

| | | |
|---|---|---|
| DAMON DUNN, | ) | CASE NO. 1:19-CV-00552-BYP |
| | ) | |
| Plaintiff, | ) | JUDGE BENITA Y. PEARSON |
| | ) | UNITED STATES DISTRICT JUDGE |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| WARDEN LYNEAL WAINWRIGHT, | ) | CARMEN E. HENDERSON |
| | ) | |
| Defendant, | ) | **REPORT & RECOMMENDATION** |
| | ) | |

## I.    Introduction

Petitioner, Damon Dunn ("Dunn"), seeks a writ of habeas corpus under 28 U.S.C. § 2254. Dunn is an Ohio prisoner who is currently serving an aggregate sentence of twenty-eight years to life in prison for aggravated murder, murder, felonious assault, and having a weapon under disability. Dunn asserts five grounds for relief. (ECF No. 1). Respondent, Warden Lyneal Wainwright, filed a return of writ on August 26, 2019. (ECF No. 9). Dunn filed a traverse on November 22, 2019. (ECF No. 11).

This matter was referred to me under Local Rule 72.2 to prepare a report and recommendation on Dunn's petition and other case-dispositive motions. Because Dunn has presented only meritless and procedurally defaulted claims, I recommend that the Court deny his petition in its entirety and not grant him a certificate of appealability.

## II.    Relevant Factual Background

The Ohio Court of Appeals for the Eighth Appellate District set forth the following facts[1]

on direct appeal:

> {¶ 3} In the early evening of May 18, 2012, Officer John Marincek responded to a call of shots fired at the Red Zone car wash on East 140th Street. When he arrived on scene, he found a male, later identified as Adams, lying on the floor with multiple gunshot wounds to the thorax and abdomen area. According to Dr. Joseph Felo, the medical examiner, Adams sustained nine gunshot wounds, clustered around his right shoulder and upper arm. The medical examiner also testified that the bullet holes in Adams's clothing were consistent with someone shooting the victim while standing over him. Toxicology reports revealed that Adams had a significant amount of PCP in his system.
>
> {¶ 4} Working at the car wash on the day of the murder was Shannon Buffington, who knew Adams and Dunn. According to Buffington, Adams was standing outside of the wash-bay area looking at his cell phone. He testified that he was washing a car, but when he heard gun shots, he ducked down in front of the car.
>
> {¶ 5} Dwight Robinson was also working at the car wash and testified that he knew both Dunn and Adams, but saw neither of them that day. Furthermore, he was unable to recognize the person shown on the video running from the car wash.
>
> {¶ 6} Geraldine Lowery testified that she was working at the car wash and knew both Adams and Dunn. She stated that she knew Dunn as "Rambo," from his days when he worked at the car wash. She testified that when she heard shots fired, she locked the door to the office. Lowery and James Flood both called police. In the recorded 911 call made by Flood, it can be heard in the background someone saying the name "Rambo."
>
> {¶ 7} Kendrall Brown, the manager of Red Zone, testified that he was washing a truck when he heard "some guys talking," then heard a "popping noise," which sounded like "firecrackers." He testified that he could not recognize anyone in the surveillance video.

---

[1] The facts found by the appellate court of record "shall be presumed to be correct," and the petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. §2254(e)(1); *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998), *cert. denied*, 527 U.S. 1040 (1999).

{¶ 8} Antoinette Whitted, a customer at the car wash, reluctantly testified about the shooting. Although she admitted she made a statement to police about the shooting, including a description of the shooter, she was unable to recall any details even with the assistance of her written statement. Furthermore, even though she saw the shooter, when she was presented with a photo array of suspects, which included Dunn, she picked someone other than Dunn with 50% certainty.

{¶ 9} The only person who could identify Dunn as the shooter was Reginald Longstreet. He testified that on May 18, 2012, he met up with Adams and smoked PCP. He testified that he came back to the car wash around 4:00 p.m. and spoke with Brown, who was washing a car. At this time, Dunn walked up the street and into the car wash, and had a brief conversation with some of the workers. According to Longstreet, he heard Adams walk inside of the car wash dragging his feet saying, "let me holler at you about that bull—," however, before he could finish his sentence, Longstreet heard gunshots. He looked inside the business and saw Dunn standing over Adams shooting him multiple times. According to Longstreet, Dunn held two guns, but one appeared to jam. After taking items from the victim's pockets, Dunn looked up at Longstreet, and ran across the street through a field.

{¶ 10} Longstreet admitted that he was currently serving a federal prison sentence. He further admitted that he did not give a statement to police about Adams's murder and Dunn's involvement until November 2012 because he fled the state of Ohio to avoid federal charges. Longstreet's initial description of the shooter as being dressed in "all black" was contrary to the video showing the shooter wearing a white shirt.

{¶ 11} During the investigation of the shooting, police recovered two different types of shell casings from the scene. Detectives were also able to obtain a surveillance video that depicted the events outside of the car wash during the time of the murder, including a person wearing a white shirt running from the car wash. However, the video was not of sufficient quality to allow a determination of the identity of the person.

{¶ 12} Detective Griffin testified that he took a statement from Dunn approximately six months after the murder. During that recorded interview, Dunn stated that he was with Marquita Lewis and Sarah Mossor on the day of the murder. However, Lewis later told police and testified that she was not with Dunn and Mossor at Edgewater

3

Beach that day. But Mossor told police and testified that she was with both Lewis and Dunn at the beach.

{¶ 13} Also during this interview, Dunn provided police with both his and Mossor's cell phone information. The jury heard factual testimony from a Verizon Wireless representative about calls and text messages placed and received by these two cell phone numbers on the day of the murder. The jury also heard factual testimony about which cellular phone tower was utilized and recorded in the phone records and viewed a corresponding map plotting the location of those towers.

{¶ 14} Following the State's case, the kidnapping charge and one count of felonious assault were dismissed. The jury returned guilty verdicts on the remaining counts and specifications and the court found Dunn guilty of having weapons while under a disability. Dunn was sentenced to 25 years to life for aggravated murder consecutive to the three-year firearm specification.

[* * * ]

{¶ 16} Trial was scheduled in this matter for April 22, 2013. Ten days prior to trial, Dunn filed a notice of alibi, stating that at the time of the murder he was at Edgewater Beach with Mossor and Lewis. At that time, Dunn had not waived his right to a speedy trial.

{¶ 17} One week prior to trial, Aaron Brockler, the assistant county prosecutor assigned to prosecute the murder charges against Dunn, showed Dunn's counsel a printout from Facebook, an online social media website. The printouts were conversations dated December 14, 2012, purportedly between "Taisha Little," the mother of Dunn's child, and Dunn's alibi witnesses, Mossor and Lewis. These conversations were initiated by Little. According to Brockler, Little was trying to establish that both Mossor and Lewis were going to lie for Dunn at trial. Based on the new evidence, which Brockler characterized as "blow [ing] up [Dunn's] alibi," Dunn temporarily waived his speedy trial rights until July 15, 2013, to investigate Little's involvement.

{¶ 18} In an attempt to locate Little, a subpoena was issued for her Facebook records. The subpoena and subsequent investigation revealed that Little's Facebook profile was created on a Cuyahoga County government computer. On May 7, 2013, Brockler admitted that he created the fictitious profile of Little, and pretended to be her in the communications with both Mossor and Lewis. According to

4

Brockler, his purpose was to make Mossor mad with the hope that she would not testify in accordance with the alibi.

{¶ 19} As a result, an internal investigation was conducted, Brockler was terminated by the county prosecutor's office, a special prosecutor was assigned, and Dunn moved to dismiss the indictment pursuant to Crim. R. 48(B) contending that the state's conduct was egregious. On November 5, 2013, the trial court conducted an evidentiary hearing on Dunn's motion, which included testimony from Dunn's attorney, Mossor, the detectives that investigated the Facebook account, and another assistant county prosecutor. Brockler was also called as a witness, but he invoked his Fifth Amendment right during examination.

{¶ 20} After considering the testimony, evidence, including internally sealed documents and records, the trial court denied Dunn's motion to dismiss. In so ruling, the trial court concluded that the conduct and actions by Brockler were not sanctioned by the county prosecutor's office and dismissing the case would only serve to punish the entire prosecutor's office. According to the trial court, the need to punish the entire office had "not been established by this record."

[* * *]

{¶ 36} During trial and over a continuing objection, Verizon representative, Jim Svoboda, testified about cellular phone records belonging to two different cellular phone numbers. His testimony established that he did not know who were the subscribers of these numbers, who the numbers actually belonged to, or who was using the telephone numbers. His testimony equated to reading the information on the records aloud to the jury and explaining what each column on the records depicted. Pertaining to which cell tower captured the beginning and end of the call, Svoboda identified the tower by identification number and from which side of the tower the call "pinged." No testimony was given explaining the concept of "pinging" or how cellular phones work.

{¶ 37} Earlier in the trial, criminal intelligence analyst, Lori Braunschweiger, testified over a continuing objection about a map she created based on information she received from a secondary source. She testified that she plotted out cellular towers by using a red pin onto a map. Additionally, she plotted those towers in conjunction with two fixed locations—Edgewater Beach and the Red Zone Car Wash. Braunschweiger stated that she made green circles around the cell towers that were "hit" on the day of the

murder by the target telephone number. She also testified that she
indicated on the map the cell tower identification numbers.

*State v. Dunn*, 2015-Ohio-3138, ¶¶ 3-14, 16-20, 35-37 (Ohio App. 8th Dist. Aug. 6, 2015).

## III.    Relevant State Procedural History

### A.    Indictment

Dunn was indicted on November 12, 2012, one count of Aggravated Murder (R.C.
2903.01(A))(Count 1); one count of Murder (R.C. 2903.02(B))(Count 2); one count of Kidnapping
(R.C. 2905.01(A)(2)) (Count 3); one count of Felonious Assault (R.C. 2903.11(A)(1))(Count 4);
one count of Felonious Assault (R.C. 2903.11(A)(2))(Count 5); and one count of Having Weapons
Under Disability (R.C. 2923.13(A)(3)) (Count 6). Counts 1-5 each carried both one- and three-
year firearm specifications. (ECF No. 9-1, PageID #: 91-94). Dunn waived his right to a jury on
Count 6. (ECF No. 9-1, PageID #: 95).

### B.    Motion to Dismiss Indictment

Prior to trial, Dunn moved to dismiss the indictment pursuant to Crim. R. 48(B) contending
that the state's conduct was egregious. *Dunn*, 2015-Ohio-3138, ¶19. "On November 5, 2013, the
trial court conducted an evidentiary hearing on Dunn's motion, which included testimony from
Dunn's attorney, Mossor, the detectives that investigated the Facebook account, and another
assistant county prosecutor." *Id*. "Brockler was also called as a witness, but he invoked his Fifth
Amendment right during examination." *Id*.

The trial court denied Dunn's motion to dismiss. *Id*. at ¶ 20.

### C.    Trial and Guilty Verdict

A jury trial was held in April 2014. (ECF No. 9-1, PageID #: 95-97). The jury found Dunn
guilty of aggravated murder with a firearm specification, murder with a firearm specification, and

felonious assault with a firearm specification; and the court found him guilty of having a weapon under disability. (ECF No. 9-1, PageID #: 97).

### D. Sentencing

On June 13, 2014, the trial court sentenced Dunn to 25 years to life for aggravated murder, consecutive to the three-year firearm specification, for an aggregate sentence of 28 years to life. (ECF No. 9-1, PageID #: 99-100).

### E. Direct Appeal

On appeal, Dunn raised three assignments of error:

1.  The trial court erred and abused its discretion in denying the defendant's motion to dismiss the indictment because of governmental misconduct.

2.  The trial court erred and abused its discretion in admitting testimony regarding cell phone towers.

3.  The trial court erred and abused its discretion in giving a flight instruction.

(ECF No. 9-1, PageID #: 112).

The Ohio Court of Appeals affirmed the judgement of the trial court. *Dunn,* 2015-Ohio-3138.

### F. Appeal to the Ohio Supreme Court

On September 18, 2015, Dunn pro se filed a Notice of Appeal with the Ohio Supreme Court under Case No. 2015-1543. (ECF No. 9-1, PageID #: 186). In his memorandum in support of jurisdiction, he raised the following propositions of law:

I.  When the state's attorney commits the most severe misconduct possible in a criminal case, a trial court errs and abuses its discretion by not granting a criminal defendant's Motion to Dismiss violating a criminal defendant's constitutional right to a fair trial and the due process of law under the 5thn and 14th amendments of the U.S. Constitution and the equivalent Articles and Sections of the Ohio Constitution.

II.     When a trial court admits non-expert testimony involving cell towers and other improper evidentiary rulings, the court violates a criminal defendant's right to a fair trial and the due process of law guaranteed him by the 5th and 14th amendments of the U.S. Constitution and the equivalent Articles and Sections of the Ohio Constitution. The court also abused its discretion in doing so.

III.    When no evidence exists to support a flight instruction since the appellant made no effort to flee at all, the court abused its discretion in giving a flight instruction because it deprives the appellant of the presumption of innocence. All of which violates the appellant's constitutional right to a fair trial and the due process of law guaranteed him by the 5th and 14th amendments of the U.S. Constitution and the equivalent Sections and Articles of the Ohio Constitution.

(ECF No. 9-1, PageID #: 189). On December 23, 2015 the Supreme Court of Ohio declined to accept jurisdiction. (ECF No. 9-1, PageID #: 227).

### G.  Application to Reopen Appeal

Dunn pro se filed an application for reopening his appeal pursuant to Ohio App. R. 26(B) on November 3, 2015. (ECF No. 9-1, PageID #: 228). As grounds for reopening the appeal, Dunn claimed that appellate counsel had provided ineffective assistance for not raising the following assignments of error on appeal:

1. Evidence in this case was insufficient to support a conviction nor was it supported by the manifest weight. Thus, the resulting conviction violates the 5th and 14th amendments of the US Constituti [*sic*] and the equivalent Articles and Sections of the Ohio Constitution.

2. When trial counsel's performance falls below the standard of reasonableness and those errors prejudiced this appellant, this appellant's constitution right to the effective assistance of counsel, guaranteed by the 6th amendment, are violated which itself results in a violation of his constitutional right to a fair trial and the due process of law which are guaranteed by the 5th and 14th amendments of the U.S. Constitution and the equivalent Articles and Sections of the Ohio Constitution.

*Id.* On May 2, 2018, the Ohio Court of Appeals denied Dunn's application for reopening his appeal. *State v. Dunn*, 2018-Ohio-1761, ¶ 27 (Ohio App. 8th Dist. May 2, 2018).

### H. Appeal of Denial of Application to Reopen Appeal

On June 18, 2018, Dunn pro se filed a Notice of Appeal with the Ohio Supreme Court. (ECF No. 9-1, PageID #: 248). In his memorandum in support of jurisdiction, he raised two propositions of law:

> I. Appellant was denied Due Process & Equal Protection of the Law as Guaranteed by the 14th Amendment of the U.S. Constitution and Section 16, Article I of the Ohio Constitution by Appellant's court appointed counsel's failure to raise issue's [sic] with merit which denied Appellant effective review of his conviction.

> II. Appellant [sic] counsel was ineffective and deprived Appellant of Due Process of law as guaranteed by the Fourteenth Amendment to the United States Constitution and Article One Section Ten of the Ohio Constitution by finding Appellant guilty of Aggravated Murder, as that verdict was not supported by sufficient evidence and was also against the manifest weight of the evidence.

(ECF No. 9-1, PageID #: 258). The State waived a memorandum in response. (ECF No. 9-1, PageID #: 269). On August 1, 2018, the Supreme Court of Ohio declined to accept jurisdiction of the appeal. (ECF No. 9-1, PageID #: 270).

### IV.    Federal Habeas Corpus Petition

On February 20, 2019, Dunn petitioned pro se that this Court issue a writ of habeas corpus. (ECF No. 1). Dunn asserted the following five grounds for relief:

> **GROUND ONE:** Improper flight instruction violating due process and a fair trial under the 5th and 14th Amendments
> **Supporting Facts:** The judge gave the jury a flight instruction which prejudiced this petitioner with the jury by making him look guilty when this petitioner made no attempt to flee before being arrested in violation of the 5th and 14th Amendments.

**GROUND TWO:** Improper denial of Motion to Dismiss based on severe government misconduct (Prosecutorial Misconduct) 5th and 14th Amend.

**Supporting Facts:** The state's case was so weak they felt the need to manufacture evidence to convict this petitioner as no reliable evidence was presented much less available to support the conviction since this petitioner did not commit the murder making this conviction a violation of due process when the prosecutor made up evidence and the entire case should have been dismissed.

**GROUND THREE:** Insufficient evidence violation of 5th and 14th Amends.

**Supporting Facts:** All essential elements were not proven beyond a reasonable doubt as no real or tangible evidence was presented to support conviction in violation of the 5th and 14th Amends.

**GROUND FOUR:** Ineffective assistance of trial counsel in violation of 5th and 6th and 14th Amends.

**Supporting Facts:** Trial counsel failed to impeach witness with his own prior testimony and conducted no legal research on tower evidence and the arguments of alleged expert witness including not being versed in Fed R. 702. Counsel allowed cell phone store worker to be accepted as expert witness all of which prejudiced this petitioner and violated his constitutional rights under the 5th, 6th and 14th Amends.

**GROUND FIVE:** Ineffective assistance of appellate counsel in violation of 5th and 6th and 14th Amends.

**Supporting Facts:** Appellant's counsel failed to raise the strongest issues on direct appeal having ample opportunity to do so causing this petitioner to have to file a 26b as an untrained litigant which is the only reason the petition was denied. This constitutes a violation of this petitioner's constitutional rights under the 5th, 6th and 14th Amends.

(ECF No. 1 at 5-12).

## V.     Legal Standards

### A.     Jurisdiction

Title 28 U.S.C. § 2254(a) authorizes district courts to entertain an application for a writ of habeas corpus "on behalf of a person in custody pursuant to the judgment of a State court." A state

prisoner may file a § 2254 petition in the "district court for the district wherein such person is in custody or in the district court for the district within which the State court was held which convicted and sentenced him." 28 U.S.C. § 2241(d). The Court of Common Pleas of Cuyahoga County sentenced Dunn, and Cuyahoga County is within this Court's geographic jurisdiction. Accordingly, this Court has jurisdiction over Dunn's § 2254 petition.

**B.  Cognizable Federal Claim**

Under 28 U.S.C. § 2254(a), a state prisoner may challenge his custody "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." A petitioner's claim is not cognizable on habeas review if it "presents no federal issue at all." *Bates v. McCaughtry*, 934 F.2d 99, 101 (7th Cir. 1991). Thus, "errors in application of state law … are usually not cognizable in federal habeas corpus." *Bey v. Bagley*, 500 F.3d 514, 519 (6th Cir. 2007) (citing *Walker v. Engle*, 703 F.2d 959, 962 (6th Cir. 1983)); *see also Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions."). A federal habeas court does not function as an additional state appellate court; it does not review state courts' decisions on state law or procedure. *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988) (citing *Oviedo v. Jago*, 809 F.2d 326, 328 (6th Cir. 1987)). Instead, "federal courts must defer to a state court's interpretation of its own rules of evidence and procedure" in considering a habeas petition. *Id.* (quoting *Machin v. Wainwright*, 758 F.2d 1431, 1433 (11th Cir. 1985)). Moreover, "the doctrine of exhaustion requires that a claim be presented to the state courts under the same theory in which it is later presented in federal court." *Wong v. Money*, 142 F.3d 313, 322 (6th 1998).

**C.  AEDPA Standard of Review**

Title 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act,

Pub. L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA"), provides in relevant part as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

To determine whether relief should be granted, the Court must use the "look-through" methodology and look to the "last explained state-court judgment" on the petitioner's federal claim. *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991) ("The essence of unexplained orders is that they say nothing. We think that a presumption which gives them no effect—which simply 'looks through' them to the last reasoned decision—most nearly reflects the role they are ordinarily intended to play."); *Wilson v. Sellers*, 138 S. Ct. 1188, 1193 (2018) ("We conclude that federal habeas law employs a 'look through' presumption.").

"A decision is 'contrary to' clearly established federal law when 'the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.'" *Otte v. Houk*, 654 F.3d 594, 599 (6th Cir. 2011) (quoting *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000)). "Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of [the Supreme] Court's decisions." *White v. Woodall*, 572 U.S. 415, 419 (2014) (quotations and citations omitted). "[U]nder the unreasonable application clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle

from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). "The unreasonable application clause requires the state court decision to be more than incorrect or erroneous"—it must be "objectively unreasonable." *Id*.

Under § 2254(d)(2), "when a federal habeas petitioner challenges the factual basis for a prior state-court decision rejecting a claim, the federal court may overturn the state court's decision only if it was 'based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Burt v. Titlow*, 571 U.S. 12, 18 (2013) (quoting 28 U.S.C. § 2254(d)(2)). A state-court decision is an "unreasonable determination of the facts" under § 2254(d)(2) only if the trial court made a "clear factual error." *Wiggins v. Smith*, 539 U.S. 510, 528 (2003). A state court's factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance. *Wood v. Allen*, 558 U.S. 290, 301 (2010). Even if "[r]easonable minds reviewing the record might disagree" about the finding in question, "on habeas review that does not suffice to supersede the trial court's … determination." *Rice v. Collins*, 546 U.S. 333, 341-42 (2006). The prisoner bears the burden of rebutting the state court's factual findings "by clear and convincing evidence." *Burt*, 571 U.S. at 18 (citing 28 U.S.C. § 2254(e)(1)).

For state prisoners, the § 2254(d) standard "is difficult to meet… because it is meant to be." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). This is because, "[a]s amended by AEDPA, § 2254(d) is meant only to stop short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings." *Id*. 103. "It preserves authority to issue the writ in cases where there is no possibility [that] fairminded jurists could disagree that the state courts decision conflicts with this Court's precedents" and "goes no further." *Id*. Thus, in order to obtain

13

federal habeas corpus relief, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*

## VI.   Discussion

### A.  Ground One

In Ground One, Dunn asserts: "Improper flight instruction violating due process and a fair trial under the 5th and 14th Amendments." (ECF No. 1 at 5). For his supporting facts Dunn states: "The judge gave the jury a flight instruction which prejudiced this petitioner with the jury by making him look guilty when this petitioner made no attempt to flee before being arrested in violation of the 5th and 14th Amendments." (ECF No. 1 at 5).

The Warden argues that Ground One is not cognizable and, alternatively, meritless. (ECF No. 9 at 17, 19). Petitioner argues that the trial court erred by giving the flight instruction and that the error "tipped the scale of justice and made [him] appear to be guilty" such that his conviction violated federal due process. (ECF No. 11 at 9).

"Generally speaking, a state court's interpretation of the propriety of a jury instruction under state law does not entitle a habeas claimant to relief." *Rashad v. Lafler*, 675 F.3d 564, 569 (6th Cir. 2012) (citing 28 U.S.C. § 2254(a); *Estelle*, 502 U.S. at 67-68); *Dalmida v. Turner*, No. 19-3627, 2020 WL 7873080, at *5 (6th Cir. July 22, 2020). "The exception is when the instruction is so flawed as a matter of state law as to 'infect[ ] the entire trial' in such a way that the conviction violates federal due process." *Id*. (quoting *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977)). "[A] reviewing court finding [instructional] error should ask whether the flaw in the instructions 'had substantial and injurious effect or influence in determining the jury's verdict.' " *Hedgpeth v.*

14

*Pulido*, 555 U.S. 57, 58 (2008) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993) (internal quotation marks omitted)).

Dunn was convicted by an Ohio jury of aggravated murder. The trial court gave the following instruction to the jury:

> There may be evidence in this case to indicate that the defendant fled from the scene of the crime. Flight does not in and of itself raise the presumption of guilt, but it may show consciousness of guilt or a guilty connection with the crime.
>
> If you find that the defendant did flee from the scene of the crime, you may consider that circumstance in your consideration of the guilt or innocence of the defendant.

(ECF No. 9-10, PageID #: 1935-1936). On direct appeal, Dunn sought to vacate his conviction on the ground that the jury instructions were erroneous in that the facts did not warrant an instruction on flight and the inclusion of the instruction prejudiced him. (ECF No. 9-1, PageID #: 130-132).

The State appellate court agreed with Dunn that the trial court erred by giving the flight instruction to the jury. Specifically, the appellate court stated: "the evidence in this case did not warrant a flight instruction. Dunn's leaving the scene was not deliberate flight in the sense of evading police and detection. There was no evidence presented that Dunn fled to a location where he could not be located or that he evaded police once detected. Accordingly, we find the trial court abused its discretion instructing the jury on flight." *Dunn*, 2015-Ohio-3138, ¶54.

Nonetheless, the appellate court found that the error did not prejudice Dunn:

> Despite the court's error, we cannot say, nor has Dunn demonstrated, that the error was prejudicial. "A reviewing court may not reverse a conviction in a criminal case due to jury instructions unless it is clear that the jury instructions constituted prejudicial error." *State v. McKibbon*, 1st Dist. Hamilton No. C-010145, 2002-Ohio-2041, ¶ 27, citing *State v. Adams*, 62 Ohio St.2d 151, 154, 404 N.E.2d 144 (1980). In order to determine whether an erroneous jury instruction was prejudicial, a reviewing court must examine the jury instructions as a whole. *State v. Harry*, 12th Dist.

Butler No. CA2008-01-013, 2008-Ohio-6380, ¶ 36, citing *State v. Van Gundy*, 64 Ohio St.3d 230, 233-234, 1992 Ohio 108, 594 N.E.2d 604 (1992). "A jury instruction constitutes prejudicial error where it results in a manifest miscarriage of justice." *State v. Hancock*, 12th Dist. Warren No. CA2007-03-042, 2008-Ohio-5419, ¶ 13. Conversely, "[a]ny error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded." Crim.R. 52(A).

Reviewing the jury instructions as a whole, we cannot say that the trial court's instruction on flight was prejudicial, such that a manifest miscarriage of justice occurred. The instruction given, although improper, allowed the jury to make its own conclusions on flight and to consider whether Dunn left the scene and, if so, his motivation for leaving. Thus, the instruction did not change the underlying facts of the case; the instruction was harmless beyond a reasonable doubt.

Accordingly, we overrule Dunn's third assignment of error.

*Dunn*, 2015-Ohio-3138, ¶55-57. In other words, the Ohio Court of Appeals found that the trial court erroneously gave the jury instruction on flight but that this error was harmless.

A federal habeas court considers a state appellate court's harmless error determination of a constitutional trial error under the standard set forth in *Brecht*—"whether the [complained of] error 'had substantial and injurious effect or influence in determining the jury's verdict.' " 507 U.S. at 623; *Davis v. Ayala*, 135 S. Ct. 2187, 2197 (2015) (when a state court applies a harmless error analysis, a habeas petitioner must show that the trial error "resulted in 'actual prejudice[,]' " quoting *Brecht*, 507 U.S. at 637). This standard applies to "constitutional error[s] of the trial type[,]" *Brecht*, 507 U.S. at 638, including erroneous jury instructions, *Hedgpeth*, 555 U.S. at 60-61.

Here, the Ohio Court of Appeals applied the correct standard—whether Dunn demonstrated actual prejudice resulting from the erroneous jury instruction on flight—and found that Dunn did not demonstrate actual prejudice. *See Brecht*, 507 U.S. at 637. Dunn argues that

giving the jury instruction tainted the jury into believing Dunn was guilty despite there being no evidence of flight. This Court disagrees. First, the instruction given on flight does not instruct the jury that a person who flees the scene is guilty; it instructs the jury that if it finds that the defendant fled the scene it may consider this circumstance in its consideration of the defendant's guilt. In other words, the jury was permitted to decide for itself whether and to what extent Dunn's actions impacted its findings. Next, it cannot be said that this instruction caused the jury to find Dunn guilty. The jury heard the defense's theory and the state's theory and chose to believe the State's evidence. For these reasons, Dunn cannot demonstrate that "the instruction is so flawed as a matter of state law as to 'infect[ ] the entire trial' in such a way that the conviction violates federal due process." *Rashad*, 675 F.3d at 569. Thus, Ground One is not cognizable.

Furthermore, the Ohio Court of Appeals applied the correct legal standard, and its ruling was not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington*, 562 U.S. at 103. Ground One would also fail on the merits.

This Court recommends that Ground One be DISMISSED as it is not cognizable on habeas review.

### B. Ground Two

In Ground Two Dunn asserts: "Improper denial of Motion to Dismiss based on severe government misconduct (Prosecutorial Misconduct) 5th and 14th Amend." (ECF No. 1 at 7). Dunn includes the following supporting facts: "The state's case was so weak they felt the need to manufacture evidence to convict this petitioner as no reliable evidence was presented much less available to support the conviction since this petitioner did not commit the murder making this

conviction a violation of due process when the prosecutor made up evidence and the entire case should have been dismissed." (ECF No. 1 at 7).

The Warden argues Ground Two is not cognizable or, alternatively, meritless. Although the Warden argues that Ground Two is not cognizable as it raises a state law claim and not a federal constitutional claim, the Warden also concedes that Ground Two could be read as a cognizable federal constitutional claim for prosecutorial misconduct. (ECF No. 9 at 25). To the extent Ground Two raises a federal constitutional claim for prosecutorial misconduct, it fails on the merits. Accordingly, the Court need not address the non-cognizable argument.

"In deciding whether prosecutorial misconduct mandates that habeas relief be granted, the Court must apply the harmless error standard." *Macias v. Makowski*, 291 F.3d 447, 451 (6th Cir. 2002) (quoting *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir.1997)). "The relevant question is thus whether the prosecutor's comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.' " *Id.* (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).

The Sixth Circuit has "adopted a two-step approach for determining whether prosecutorial misconduct violates a defendant's due process rights." *Id.* at 452 (citing *United States v. Carter*, 236 F.3d 777, 783 (6th Cir. 2001); *see Boyle v. Million*, 201 F.3d 711, 717 (6th Cir. 2000) (utilizing this test to evaluate a due process claim based upon prosecutorial misconduct raised in a post-AEDPA habeas petition)). "First, we must consider whether the prosecutor's conduct and remarks were improper." *Id.* "If we conclude that the remarks were improper, then we must apply the four-factor test set forth in *United States v. Carroll*, 26 F.3d 1380, 1385 (6th Cir. 1994), to determine 'whether the impropriety was flagrant' and thus violated the defendant's due process rights." *Id.* (citing *Carter*, 236 F.3d at 783). The four *Carroll* factors are: "(1) whether the conduct and remarks

18

of the prosecutor tended to mislead the jury or prejudice the defendant; (2) whether the conduct or remarks were isolated or extensive; (3) whether the remarks were deliberately or accidentally made; and (4) whether the evidence against the defendant was strong." *Id*.

Dunn asserts that prosecutor misconduct violated his due process rights. Specifically, the actions by former prosecutor Aaron Brockler. As explained by the Ohio Court of Appeals:

> {¶ 16} Trial was scheduled in this matter for April 22, 2013. Ten days prior to trial, Dunn filed a notice of alibi, stating that at the time of the murder he was at Edgewater Beach with Mossor and Lewis. At that time, Dunn had not waived his right to a speedy trial.
>
> {¶ 17} One week prior to trial, Aaron Brockler, the assistant county prosecutor assigned to prosecute the murder charges against Dunn, showed Dunn's counsel a printout from Facebook, an online social media website. The printouts were conversations dated December 14, 2012, purportedly between "Taisha Little," the mother of Dunn's child, and Dunn's alibi witnesses, Mossor and Lewis. These conversations were initiated by Little. According to Brockler, Little was trying to establish that both Mossor and Lewis were going to lie for Dunn at trial. Based on the new evidence, which Brockler characterized as "blow [ing] up [Dunn's] alibi," Dunn temporarily waived his speedy trial rights until July 15, 2013, to investigate Little's involvement.
>
> {¶ 18} In an attempt to locate Little, a subpoena was issued for her Facebook records. The subpoena and subsequent investigation revealed that Little's Facebook profile was created on a Cuyahoga County government computer. On May 7, 2013, Brockler admitted that he created the fictitious profile of Little, and pretended to be her in the communications with both Mossor and Lewis. According to Brockler, his purpose was to make Mossor mad with the hope that she would not testify in accordance with the alibi.
>
> {¶ 19} As a result, an internal investigation was conducted, Brockler was terminated by the county prosecutor's office, a special prosecutor was assigned, and Dunn moved to dismiss the indictment pursuant to Crim. R. 48(B) contending that the state's conduct was egregious. On November 5, 2013, the trial court conducted an evidentiary hearing on Dunn's motion, which included testimony from Dunn's attorney, Mossor, the detectives that investigated the Facebook account, and another assistant county prosecutor.

>     Brockler was also called as a witness, but he invoked his Fifth
>     Amendment right during examination.

*Dunn*, 2015-Ohio-3138, ¶¶ 16-19.

Here, there is no debate that former prosecutor Brockler's conduct was improper. The question thus becomes whether Brockler's conduct violated Dunn's due process rights under the *Carroll* factors.

**(1) The conduct did not tend to mislead the jury or prejudice Dunn.**

The Court finds that the first *Carroll* weighs against Dunn. Brockler's conduct occurred, was discovered, and was dealt with prior to trial. Thus, it was not presented before the jury. Additionally, the Court cannot say that Brocker's conduct prejudiced Dunn. When presented with the conversations between Brockler posing as Little and Dunn's alibi witnesses, Dunn's attorney investigated the matter and exposed Brockler's involvement. Brockler was quickly removed from the case and a special prosecutor was appointed. The conversations were not used by the special prosecutor at Dunn's trial. Moreover, Mosser, one of Dunn's alibi witnesses, testified on Dunn's behalf at the hearing on the motion to dismiss, thus his alibi was still a viable defense at trial. Although the other alibi witness, Lewis, may have testified contrary to Mosser, that was an issue of credibility for the jury to decide.

**(2) The conduct was isolated.**

The second factor also weighs against Dunn. Brockler's conduct, although improper, was not sanctioned by the Cuyahoga County prosecutor's office. As soon as the conduct was discovered by the office, the Cuyahoga County Prosecutor conducted an internal investigation, terminated Brockler, and assigned a special prosecutor to handle Dunn's prosecution. There is no indication that the new prosecutor attempted to use the "evidence" obtained by Brockler's improper conduct.

**(3) The conduct was deliberate.**

The third factor weighs in favor of Dunn. Brockler's conduct was undoubtedly deliberate. Brockler admitted that he created a fictitious Facebook profile and pretended to be that person in social media communications with two potential witnesses. Brockler admitted that he had hoped to anger alibi witness Mosser so that she would not testify concerning Dunn's alibi.

**(4) The evidence against Dunn was strong.**

Finally, the fourth *Carroll* factor also weighs against Dunn. Dunn was identified by an eyewitness as the shooter who described Dunn walking into the carwash where the victim was located. He heard the victim saying, "let me holler at you about that bull—," but then the witness heard gunshots. The eyewitness testified that he looked inside the business and saw Dunn standing over the victim shooting him multiple times and holding two guns, one which appeared to have jammed. That eyewitness's description of the shooting was corroborated by the medical examiner and the investigation which indicated two guns had been used. Dunn's street name "Rambo" was heard in the background of the 911 call. Further, cell phone records indicated that Dunn's phone was in the area of the car wash at the time of the shooting.

In sum, only one of the four factors of the *Carroll* test (the statements were deliberate) weigh in favor of Dunn's claim that Brockler's conduct pretrial violated his due process rights and three weigh against his claim. On habeas corpus, the relevant question is not whether the state court's decision was wrong, but "whether it was an unreasonable application of clearly established federal law." *Macias*, 291 F.3d at 454 (citing 28 U.S.C. § 2254(d)(1); *Williams*, 529 U.S. at 411). Given that the prosecutor's conduct occurred prior to trial, was not made to the jury, was isolated, and the evidence against Dunn was strong, the determination by the Ohio Court of Appeals that the conduct did not violate Dunn's due process rights was not objectively unreasonable.

Accordingly, the Court recommends that Ground Two be denied on the merits.

### C. Ground Three

In Ground Three Dunn asserts: "Insufficient evidence violation of 5th and 14th Amends." (ECF No. 1 at 8). He includes the following supporting facts: "All essential elements were not proven beyond a reasonable doubt as no real or tangible evidence was presented to support conviction in violation of the 5th and 14th Amends." (ECF No. 1 at 8).

The Warden argues that Ground Three is procedurally defaulted. (ECF No. 9 at 28). Petitioner acknowledges that he failed to properly raise this issue to the State court but argues that the failure was caused by ineffective assistance of appellate counsel, which he raised in his Ohio App. R. 26(B) motion to reopen his appeal. (ECF No. 11 at 14, 16).

Procedural default occurs when a habeas petitioner fails to obtain consideration of a federal constitutional claim by state courts because he failed to: (1) comply with a state procedural rule that prevented the state courts from reaching the merits of the petitioner's claim; or (2) fairly raise that claim before the state courts while state remedies were still available. *See generally Wainwright v. Sykes*, 433 U.S. 72, 80, 84-87 (1977); *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982); *Williams,* 460 F.3d at 806. In determining whether there has been a procedural default, the federal court looks to the last explained state-court judgment. *Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991); *Combs v. Coyle*, 205 F.3d 269, 275 (6th Cir. 2000). When a state court declines to address a prisoner's federal claims because the prisoner failed to meet a state procedural requirement, federal habeas review is barred as long as the state judgment rested on "independent and adequate" state procedural grounds. *Coleman v. Thompson*, 501 U.S. 722, 729 (1991). To be independent, a state procedural rule and the state courts' application of it must not rely in any part on federal law. *Id*. at 732-33. To be adequate, a state procedural rule must be "'firmly established'

and 'regularly followed'" by the state courts at the time it was applied. *Beard v. Kindler*, 558 U.S. 53, 60-61 (2009).

A petitioner procedurally defaults a claim by failing to "fairly present" the claim in state court when he does not pursue that claim through the state's "'ordinary appellate review procedures,'" and, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim. *Williams*, 460 F.3d at 806 (quoting *O'Sullivan*, 526 U.S. at 848); *see also Baston v. Bagley*, 282 F. Supp. 2d 655, 661 (N.D. Ohio 2003) ("Issues not presented at each and every level [of the state courts] cannot be considered in a federal habeas corpus petition."). Under these circumstances, while the exhaustion requirement is technically satisfied because there are no longer any state-court remedies available to the petitioner, the petitioner's failure to have the federal claims fully considered in the state courts constitutes a procedural default of those claims, barring federal habeas review. *Williams*, 460 F.3d at 806 ("Where state court remedies are no longer available to a petitioner because he or she failed to use them within the required time period, procedural default and not exhaustion bars federal court review."); *see also Gray v. Netherland*, 518 U.S. 152, 161-62 (1996) ("Because the exhaustion requirement 'refers only to remedies still available at the time of the federal petition,' . . ., it is satisfied 'if it is clear that [the habeas petitioner's] claims are now procedurally barred under [state] law' . . . ." (internal citations omitted)). Furthermore, to "fairly present" a claim to a state court, a petitioner must assert both its legal and factual basis. *Williams*, 460 F.3d at 806 (citing *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000)). Most importantly, a "'petitioner must present his claim to the state courts as a federal constitutional issue – not merely as an issue arising under state law.'" *Id*. (quoting *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984)).

There is no dispute that Ground Three is procedurally defaulted. (*See* ECF No. 11 at 14). Dunn did not raise a sufficiency of the evidence claim on direct appeal and can no longer do so. *See* Ohio App. R. 4(A)(1); Ohio App. R. 14(A). "When a petitioner has failed to exhaust his state remedies, and when he can no longer do so under state law, his habeas claim is procedurally defaulted." *Adams v. Burton*, No. 16-1476, 2016 WL 6610219, at *2 (6th Cir. Nov. 8, 2016) (citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999). "When a habeas claim is procedurally defaulted, it may nevertheless be considered if the petitioner shows 'cause for the procedural default and prejudice attributable thereto ....' " *Burroughs v. Makowski*, 411 F.3d 665, 667 (6th Cir. 2005) (quoting *Murray v. Carrier*, 477 U.S. 478, 484 (1986)). "To show cause, a petitioner must show that some objective factor external to the defense impeded ... his efforts to comply with the State's procedural rule." *Id*. (citation and internal quotation marks omitted).

Dunn asserts as his "cause" his counsel's failure to raise the claims in his petition on prior direct appeal. "[I]n certain circumstances counsel's ineffectiveness in failing properly to preserve the claim for review in state court" will establish cause. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000) (citing *Murray*, 477 U.S. at 488–89). "To constitute cause, that ineffectiveness must itself amount to a violation of the Sixth Amendment, and therefore must be both exhausted and not procedurally defaulted." *Burroughs*, 411 F.3d at 668. The Warden does not argue that Dunn failed to exhaust his assertion of ineffective assistance of appellate counsel as it relates to his sufficiency claim. Indeed, Dunn raised this same basis in his motion to reopen his appeal and his appeal to the Supreme Court of Ohio. Accordingly, the Court will address whether his counsel's failure to raise a sufficiency issue on direct appeal satisfies the "cause" requirement to excuse his procedural default. In order to establish such a claim, petitioner must demonstrate that his attorney on direct appeal made such serious errors that (1) he was not functioning as the "counsel" guaranteed by the

Sixth Amendment; and (2) such deficient performance prejudiced the defense. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984).

"To evaluate a claim of ineffective assistance of appellate counsel, we assess the strength of the claim appellate counsel failed to raise." *Wilson v. Parker*, 515 F.3d 682, 707 (6th Cir. 2008), *as amended on denial of reh'g and reh'g en banc* (Feb. 25, 2009). "Counsel's failure to raise an issue on appeal could only be ineffective assistance if there is a reasonable probability that inclusion of the issue would have changed the result of the appeal." *McFarland v. Yukins*, 356 F.3d 688, 699 (6th Cir.2004). "If there is a reasonable probability that [the defendant] would have prevailed on appeal had the claim been raised, we can then consider whether the claim's merit was so compelling that appellate counsel's failure to raise it amounted to ineffective assistance of appellate counsel." *Id.* at 700.

Here, Dunn cannot establish a reasonable probability that he would have prevailed on his sufficiency of the evidence claim had it been raised on direct appeal. Under *Jackson v. Virginia*, 443 U.S. 307 (1979), a sufficiency of the evidence claim is reviewed by determining whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. 443 U.S. at 319; *see also Cavazos v. Smith*, 565 U.S. 1, 7 (2011); *Bagby v. Sowders*, 894 F.2d 792, 794 (6th Cir. 1990). On habeas review, "the *Jackson v. Virginia* standard is so demanding that '[a] defendant who challenges the sufficiency of the evidence to sustain his conviction faces a nearly insurmountable hurdle.'" *Davis v. Lafler*, 658 F.3d 525, 534 (6th Cir. 2011) (*en banc*), *cert. denied*, 566 U.S. 947 (2012) (quoting *United States v. Oros*, 578 F.3d 703, 710 (7th Cir. 2009)). The Supreme Court has affirmed that "*Jackson* claims face a high bar in federal habeas proceedings." *Coleman*, 566 U.S. at 651

A sufficiency of the evidence claim "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Sanford v. Yukins*, 288 F.3d 855, 860 (6th Cir.), cert. denied, 537 U.S. 980 (2002) (quoting *Jackson*, 443 U.S. at 324 n.16). Thus, the federal court must look to state law to determine the elements of the crime. *See Palmer v. Palmer*, No. 1:15-CV-458, 2018 WL 7891722, at *15 (W.D. Mich. Oct. 29, 2018), *report and recommendation adopted*, No. 1:15-CV-458, 2019 WL 1429258 (W.D. Mich. Mar. 29, 2019) (citing *Johnson v. United States*, 559 U.S. 133, 138 (2010) ("We are, however, bound by the Florida Supreme Court's interpretation of state law, including its determination of the elements ...."); *Jackson*, 443 U.S. at 324 n.16 ("The respondents have suggested that this constitutional standard will invite intrusions upon the power of the States to define criminal offenses. Quite to the contrary, the standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law.").

Dunn was found guilty of aggravated murder (O.R.C. 2903.01(A)), murder (O.R.C. 2903.02(B)), felonious assault (O.R.C. 2903.11(A)(2)), and having weapons while under disability (O.R.C. 2923.13(A)(3)). Dunn does not explain how any individual element as lacking, but asserts that appellate counsel should have included a sufficiency challenge based on the following:

> 1) Prosecutor Brockler was [first] to be convinced the evidence in this case was insufficient [sic] when he decided he needed to use the illegal and unethical means to obtain the conviction or he would lose;
>
> 2) There is no DNA, fingerprint or other reliable evidence to support the conviction and a video which is exculpatory not inculpatory;
>
> 3) The state's entire case is predicated on the self-serving testimony of Reginald Longstreet who only came forward to offer testimony months after the incident and then only because he himself was in federal custody facing 20 years in prison;

4) Longstreet's statements and testimony at trial were a rollercoaster rife at best with one lie and inconsistency after another, One signici [sic] significant proof of this is that he told the police he saw everything yet described the petitioner as wearing all black when video footage at the scene shows the shooter to be wearing white;

5) The record clearly shows that this is not the first time Longstreet has traded information for leiniency [sic] in his own criminal cases and could be described as an expert [sic] witness for the state; [and]

6) Despite the prosecutor's best effort to discredit by foul blows, this petitioner's alibi remained intact[.]

(ECF No. 11 at 15).

First, the majority of Dunn's argument seeks to attack the credibility of Longstreet. However, a habeas court does not reconsider the credibility of witnesses. *White v. Steele*, 602 F.3d 707, 710 (6th Cir. 2009), *cert. denied*, 562 U.S. 858 (2010) (quoting *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009) (This court does "not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute our judgment for that of the jury."); s*ee, e.g., McKenzie v. Smith*, 326 F.3d 721, 727 (6th Cir. 2003) cert. denied, 540 U.S. 1158 (2004) (It is the province of the trier of fact to resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from the evidence presented.)). The Supreme Court has emphasized that "it is the responsibility of the jury — not the court — to decide what conclusions should be drawn from evidence admitted at trial." *Cavazos*, 565 U.S. at 2. *Jackson* "unambiguously instructs that a reviewing court 'faced with a record of historical facts that supports conflicting inferences must presume — even if it does not affirmatively appear in the record — that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.' " *Cavazos*, 565 U.S. at 7 (quoting *Jackson v. Virginia,* 443 U.S. 307, 326 (1979). Thus, Dunn's attempt to have this Court reconsider the credibility of Longstreet's testimony fails on habeas review.

Second, after examining the evidence adduced at trial, this Court cannot say that appellate counsel was ineffective for choosing not to raise a sufficiency argument. On direct appeal, the Ohio Court of Appeals stated the following evidence was presented at trial:

{¶ 3} In the early evening of May 18, 2012, Officer John Marincek responded to a call of shots fired at the Red Zone car wash on East 140th Street. When he arrived on scene, he found a male, later identified as Adams, lying on the floor with multiple gunshot wounds to the thorax and abdomen area. According to Dr. Joseph Felo, the medical examiner, Adams sustained nine gunshot wounds, clustered around his right shoulder and upper arm. The medical examiner also testified that the bullet holes in Adams's clothing were consistent with someone shooting the victim while standing over him. Toxicology reports revealed that Adams had a significant amount of PCP in his system.

{¶ 4} Working at the car wash on the day of the murder was Shannon Buffington, who knew Adams and Dunn. According to Buffington, Adams was standing outside of the wash-bay area looking at his cell phone. He testified that he was washing a car, but when he heard gun shots, he ducked down in front of the car.

{¶ 5} Dwight Robinson was also working at the car wash and testified that he knew both Dunn and Adams, but saw neither of them that day. Furthermore, he was unable to recognize the person shown on the video running from the car wash.

{¶ 6} Geraldine Lowery testified that she was working at the car wash and knew both Adams and Dunn. She stated that she knew Dunn as "Rambo," from his days when he worked at the car wash. She testified that when she heard shots fired, she locked the door to the office. Lowery and James Flood both called police. In the recorded 911 call made by Flood, it can be heard in the background someone saying the name "Rambo."

{¶ 7} Kendrall Brown, the manager of Red Zone, testified that he was washing a truck when he heard "some guys talking," then heard a "popping noise," which sounded like "firecrackers." He testified that he could not recognize anyone in the surveillance video.

{¶ 8} Antoinette Whitted, a customer at the car wash, reluctantly testified about the shooting. Although she admitted she made a statement to police about the shooting, including a description of the shooter, she was unable to recall any details even with the assistance

28

of her written statement. Furthermore, even though she saw the shooter, when she was presented with a photo array of suspects, which included Dunn, she picked someone other than Dunn with 50% certainty.

{¶ 9} The only person who could identify Dunn as the shooter was Reginald Longstreet. He testified that on May 18, 2012, he met up with Adams and smoked PCP. He testified that he came back to the car wash around 4:00 p.m. and spoke with Brown, who was washing a car. At this time, Dunn walked up the street and into the car wash, and had a brief conversation with some of the workers. According to Longstreet, he heard Adams walk inside of the car wash dragging his feet saying, "let me holler at you about that bull—," however, before he could finish his sentence, Longstreet heard gunshots. He looked inside the business and saw Dunn standing over Adams shooting him multiple times. According to Longstreet, Dunn held two guns, but one appeared to jam. After taking items from the victim's pockets, Dunn looked up at Longstreet, and ran across the street through a field.

{¶ 10} Longstreet admitted that he was currently serving a federal prison sentence. He further admitted that he did not give a statement to police about Adams's murder and Dunn's involvement until November 2012 because he fled the state of Ohio to avoid federal charges. Longstreet's initial description of the shooter as being dressed in "all black" was contrary to the video showing the shooter wearing a white shirt.

{¶ 11} During the investigation of the shooting, police recovered two different types of shell casings from the scene. Detectives were also able to obtain a surveillance video that depicted the events outside of the car wash during the time of the murder, including a person wearing a white shirt running from the car wash. However, the video was not of sufficient quality to allow a determination of the identity of the person.

{¶ 12} Detective Griffin testified that he took a statement from Dunn approximately six months after the murder. During that recorded interview, Dunn stated that he was with Marquita Lewis and Sarah Mossor on the day of the murder. However, Lewis later told police and testified that she was not with Dunn and Mossor at Edgewater Beach that day. But Mossor told police and testified that she was with both Lewis and Dunn at the beach.

{¶ 13} Also during this interview, Dunn provided police with both his and Mossor's cell phone information. The jury heard factual

> testimony from a Verizon Wireless representative about calls and
> text messages placed and received by these two cell phone numbers
> on the day of the murder. The jury also heard factual testimony about
> which cellular phone tower was utilized and recorded in the phone
> records and viewed a corresponding map plotting the location of
> those towers.

*Dunn*, 2015-Ohio-3138, ¶¶ 3-13. Thus, eyewitness testimony from Longstreet identified Dunn as

the shooter. Longstreet's description of the shooting was corroborated by the medical examiner

and the investigation which indicated two guns had been used. Dunn's street name "Rambo" was

heard in the background of the 911 call. Further, cell phone records indicated that Dunn's phone

was in the area of the car wash at the time of the shooting. When viewing the evidence in the light

most favorable to the prosecution, a rational trier of fact could have found the essential elements

of the crimes beyond a reasonable doubt. Thus, Dunn has not demonstrated a reasonable

probability that he would have prevailed on his sufficiency of the evidence claim had it been raised

on direct appeal.

Dunn cannot demonstrate that his appellate counsel was ineffective for failing to raise the

sufficiency of the evidence issue on direct appeal. Accordingly, Dunn cannot rely on "ineffective

assistance of appellate counsel" as "cause" for failing to properly raise the sufficiency of the

evidence issue on direct appeal.

This Court recommends DISMISSING Ground Three as procedurally defaulted.

### D. Ground Four

In Ground Four, Dunn claims: "Ineffective assistance of trial counsel in violation of 5th

and 6th and 14th Amends." (ECF No. 1 at 10). As supporting facts, he argues: "Trial counsel failed

to impeach witness with his own prior testimony and conducted no legal research on tower

evidence and the arguments of alleged expert witness including not being versed in Fed R. 702.

Counsel allowed cell phone store worker to be accepted as expert witness all of which prejudiced

this petitioner and violated his constitutional rights under the 5th, 6th and 14th Amends." (ECF No. 1 at 10).

The Warden argues that Ground Four is procedurally defaulted and barred by Ohio's doctrine of res judicata. (ECF No. 9 at 32). Petitioner acknowledges that he failed to properly raise this issue to the State court but argues that the failure was caused by ineffective assistance of appellate counsel. (ECF No. 11 at 19).

As previously stated, "[t]o constitute cause, that ineffectiveness must itself amount to a violation of the Sixth Amendment, and therefore must be both exhausted and not procedurally defaulted." *Burroughs*, 411 F.3d at 668. In his App. R. 26(B) application to reopen his appeal, Dunn asserted that his appellate counsel had been ineffective for failing to raise issue of ineffective assistance of trial counsel errors on the basis that trial counsel failed to "properly and thoroughly" impeach Longstreet and failed to conduct proper legal research regarding the admission of cell phone records and expert testimony. (ECF No. 9-1, PageID #: 233). The Ohio Court of Appeals rejected this argument. *Dunn*, 2018-Ohio-1761, ¶ 22-27. Dunn appealed to the Supreme Court of Ohio but did not include these arguments before the Court. "[A] petitioner must raise both the legal and factual basis for a claim in order to have fairly presented the claim to the state court." *Williams*, 460 F.3d at 808 (citing *McMeans*, 228 F.3d at 681). In Dunn's first proposition of law, he argued that his appellate counsel was ineffective for "failing to raise issue's [sic] with merit which denied [him] effective review of his conviction." (ECF No. 9-1, PageID #: 258). The argument that follows does not explain the factual basis of the claim or specify the "issues with merit" that Dunn argues should have been raised. (ECF No. 9-1, PageID #: 258). Instead, Dunn complained that his appellate counsel repeatedly refused to raise issues that he wanted raised without specifying what those issues are. Additionally, Dunn complained about his counsel's failure to communicate with

him. (ECF No. 9-1, PageID #: 258). In his introduction paragraph Dunn referred only to his appellate counsel's failure to raise sufficiency and manifest weight issues on direct appeal. (ECF No. 9-1, PageID #: 252). In the second proposition of law, Dunn argued that his convictions were against the sufficiency of the evidence and the manifest weight of the evidence. (ECF No. 9-1, PageID #: 258). Accordingly, Dunn's claim that his appellate counsel was ineffective for failing to raise issues of ineffective assistance of trial counsel was not "fairly presented" and is procedurally defaulted. *Williams*, 460 F.3d at 806 (to "fairly present" a claim to a state court, a petitioner must assert both its legal and factual basis).

Because that claim was procedurally defaulted, "it cannot now be used to show cause and prejudice for his undisputed procedural default" on Ground Four. *Burroughs*, 411 F.3d at 668. The Court, therefore, recommends Ground Four be DISMISSED as procedurally defaulted.

### E. Ground Five

In Ground Five, Dunn alleges that he received "Ineffective assistance of appellate counsel in violation of 5th and 6th and 14th Amends." (ECF No. 1 at 12). As supporting facts, he argues: "Appellats [sic] counsel failed to raise the strongest issues on direct appeal having ample opportunity to do so causing this petitioner to have to file a 26b as an untrained litigant which is the only reason the petition was denied. This constitutes a violation of this petitioner's constitutional rights under the 5th, 6th and 14th Amends." (ECF No. 1 at 12).

The Warden argues that Ground Five is improperly pled and, alternatively, procedurally defaulted in part and meritless in part. (ECF No. 9 at 34, 35). Petitioner's traverse clarifies (somewhat) that Ground Five involves appellate counsel's failures to raise certain issues on appeal: A) that his conviction was against the sufficiency of the evidence; B) that his conviction was against the manifest weight of the evidence; C) that his trial counsel was ineffective for failing to

properly cross examine State's-witness Longstreet; and D) that his trial counsel was ineffective for allowing certain testimony concerning cell phones. (ECF No. 11 at 20, 22-23).

As discussed above in Ground Four, Dunn's claim that his appellate counsel was ineffective for failing to raise ineffective assistance of trial counsel on direct appeal is procedurally defaulted as it was not fairly presented to the Supreme Court of Ohio. Accordingly, Ground Five is procedurally defaulted in part.

The remaining two arguments— that his appellate counsel was ineffective for failing to raise issues of manifest weight and sufficiency of the evidence— were properly preserved for appeal. When a state court reaches the merits of an ineffective assistance of counsel claim, federal habeas courts provide AEDPA deference to that adjudication under § 2254(d). *Perkins v. McKee*, 411 F. App'x 822, 828 (6th Cir. 2011). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Harrington*, 562 U.S. at 99. Also, in *Harrington*, the Supreme Court emphasized the double layer of deference that federal courts must give state courts in reviewing *Strickland* claims under AEDPA:

> As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement. ... An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the *Strickland* standard must be applied with scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve. ... Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is

any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Perkins*, 411 Fed. Appx. at 828 (quoting *Harrington*, 131 S. Ct. 770, 786–788).

As this Court discussed above in the analysis of Ground Three, Dunn cannot show that his counsel was unreasonable for failing to bring the sufficiency of the evidence claim as it was not likely to succeed on appeal. Accordingly, the part of Ground Five that applies to Dunn's claim that his appellate counsel was ineffective for failing to raise a sufficiency of the evidence issue on direct appeal fails on the merits.

Finally, the part of Ground Five in which Dunn claims that his appellate counsel was ineffective for failing to raise a manifest weight of the evidence issue on direct appeal also fails on the merits.[2] The Ohio Court of Appeals reviewed Dunn's claim of ineffective assistance of appellate counsel in its analysis of Dunn's Ohio App. R. 26(B) motion. The state court's adjudication appropriately cited *Strickland v. Washington*, 466 U.S. 668 (1984), stating:

> {¶ 5} A criminal defendant is constitutionally entitled to representation during the appellate process. Therefore, claims of ineffective assistance of appellate counsel are cognizable. *State v. Murnahan*, 63 Ohio St.3d 60, 584 N.E.2d 1204 (1992). App.R. 26(B) provides a procedure to assert such claims. It allows for the reopening of an appeal based on a claim that appellate counsel was ineffective.
>
> {¶ 6} An application for reopening must set forth "[o]ne or more assignments of error or arguments in support of assignments of error that previously were not considered on the merits in the case by any appellate court or that were considered on an incomplete record because of appellate counsel's deficient representation[.]" App. R. 26(B)(2)(c). The application is required to support the alleged assignments of error with a sworn statement detailing the deficient

---

[2] Although Dunn clarified that he intended to raise a manifest weight argument in Ground Five (ECF No. 11 at 20), his supporting argument mentions only sufficiency of the evidence and his claims of ineffective assistance of trial counsel. Nonetheless, in an abundance of caution, this Court will analyze Dunn's Ground Five claim that his appellate counsel was ineffective for failing to raise a manifest weight of the evidence claim.

representation and how the deficient performance prejudiced the applicant. App. R. 26(B)(2)(d). "To succeed on an App. R. 26(B) application, a petitioner must establish that counsel's performance fell below an objective standard of reasonable representation and that he was prejudiced by the deficient performance." *State v. Adams*, 146 Ohio St.3d 232, 2016–Ohio–3043, 54 N.E.3d 1227, ¶2, citing *State v. Dillon*, 74 Ohio St.3d 166, 171, 657 N.E.2d 273 (1995); App. R. 26(B)(5). This is the standard applicable to other ineffective assistance claims announced in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L.Ed.2d 674 (1984). *See State v. Reed*, 74 Ohio St.3d 534, 660 N.E.2d 456 (1996). Dunn must demonstrate that "there was a 'genuine issue' as to whether he has a 'colorable claim' of ineffective assistance of counsel on appeal." *State v. Spivey*, 84 Ohio St.3d 24, 25, 701 N.E.2d 696 (1998).

{¶ 7} In order to show prejudice, an applicant must demonstrate that "there is a reasonable probability that, but for counsel's errors, the factfinder would have had a reasonable doubt about his guilt." Strickland at 695. In determining whether an applicant has been prejudiced, the court "must consider the totality of the evidence before the judge or jury." *Id*.

{¶ 8} An appellate attorney has wide latitude and thus the discretion to decide which issues and arguments will prove most useful on appeal. *Strickland* at _7. Appellate counsel is also not required to raise every possible issue. *Jones v. Barnes*, 463 U.S. 745, 753–754, 103 S. Ct. 3308, 77 L.Ed.2d 987 (1983); *State v. Gumm*, 73 Ohio St.3d 413, 653 N.E.2d 253 (1995). Additionally, appellate counsel is not required to argue assignments of error that are meritless. *Id*.

*Dunn*, 2018-Ohio-1761, ¶¶ 5-8.

Thereafter, the state court of appeals determined that Dunn failed to satisfy the second prong of *Strickland* in that he failed to show that but for the error, the result of his trial would have been different. Specifically, the court stated:

{¶ 15} Dunn also asserts that he was prejudiced by counsel's failure to argue that his convictions were against the manifest weight of the evidence.

{¶ 16} A manifest weight inquiry looks at whether the evidence was substantial enough for a jury to reasonably conclude that all of the elements of the alleged crime have been proved beyond a reasonable

doubt. The appellate court sits " 'as a thirteenth juror.' " *Thompkins*, 78 Ohio St.3d at 386, 678 N.E.2d 541 (1997), quoting *Tibbs v. Florida*, 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). The appellate court reviews the entire record, considers the credibility of the witnesses, weighs the evidence and all reasonable inferences, and determines whether the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Martin*, 20 Ohio App.3d at 175, 485 N.E.2d 717 (1st Dist. 1983).

{¶ 17} Dunn alleges that Longstreet's testimony, the only eyewitness testimony that placed him at the car wash at the time of murder, cannot be believed because of omissions, alterations, and the presence of an ulterior motive.

{¶ 18} Shortly after witnessing the murder, Longstreet fled the state in an attempt to avoid federal prosecution for drug trafficking. Therefore, he did not provide a statement to police about the shooting until months later, when he was attempting to work out a reduction to the federal charges.

{¶ 19} Dunn highlights this ulterior motive, the fact that Longstreet testified that he was high on PCP at the time he witnessed the murder, and instances where Longstreet's testimony conflicted with his previous statements. For instance, in a pretrial statement Longstreet described the shooter as wearing all black, but a video that purported to show the perpetrator running from the scene depicted a person wearing a white shirt and dark pants. Most of the instances highlighted by Dunn were addressed at trial on cross-examination and used in an attempt to impeach Longstreet's credibility.

{¶ 20} After a review of the record, this court cannot say that counsel was ineffective for failing to raise a challenge to the manifest weight of the evidence. There are small inconsistencies in some aspects of the testimony adduced at trial, but nothing that casts doubt on the verdicts reached by the jury and trial court. This is not the exceptional case where the trier of fact clearly lost its way in rendering its verdict.

{¶ 21} There is no colorable claim of ineffective assistance of appellate counsel for failing to mount a sufficiency or manifest weight challenge.

*Dunn*, 2018-Ohio-1761, ¶¶ 15-21.

Dunn does not demonstrate how the above-quoted state court of appeals' determination was contrary to or an unreasonable application of *Strickland*. Moreover, because the state court of appeals adjudicated his ineffective assistance of appellate counsel claim on the merits, there is a double layer of deference applicable to the Court's review of an ineffective assistance of counsel claim. *Harrington*, 131 S. Ct. at 788. Here, Dunn has failed to overcome the double and highly deferential standards applicable to the Court's review of his *Strickland* claims. He has not shown that the state court's decision "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Bobby v. Dixon*, 565 U.S. 23, 24 (2011) (quoting *Harrington*, 131 S. Ct. at 786–787. In fact, this Court's review indicates that the state court of appeals' factual review was amply supported by the record and its legal analysis followed the dictates of *Strickland*. Accordingly, Ground Five relating to Dunn's manifest weight argument should be dismissed as meritless.

## VII.  Certificate of Appealability

### A.  Legal Standard

A habeas petitioner may not appeal the denial of his application for a writ of habeas corpus unless a judge issues a certificate of appealability and specifies the issues that can be raised on appeal. 28 U.S.C. § 2253(c) ("A certificate of appealability may issue … only if the applicant has made a substantial showing of the denial of a constitutional right."). The "'petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). The granting of a certificate of appealability does not require a showing that the appeal would succeed on any claim. *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003).

### B.      Analysis

Dunn's grounds for relief are not cognizable, meritless and/or procedurally defaulted. If the Court accepts the foregoing recommendation, then Dunn has not made a substantial showing of a denial of a constitutional right. He would then not be entitled to a certificate of appealability. Thus, I recommend that the Court not issue a certificate of appealability.

## VIII.   Recommendation

Dunn has presented only not cognizable, meritless and procedurally defaulted claims. Thus, I recommend that the Court deny his petition in its entirety and not grant him a certificate of appealability.

DATED: December 21, 2021

*s/ Carmen E. Henderson*
Carmen E. Henderson
United States Magistrate Judge

_____

### OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *Berkshire v. Beauvais*, 928 F.3d 520, 530-31 (6th Cir. 2019).